**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**JASON D. ALSTON** **PLAINTIFF**

**V.** **NO. 4:18-CV-157-DMB-JMV**

**PRAIRIE FARMS DAIRY, INC., d/b/a Luvel; HAROLD LEROY PAPEN** **DEFENDANTS**

**ORDER**

Before the Court are the defendants' motion for summary judgment, Doc. #87; Jason Alston's motion for summary judgment, Doc. #84; and Alston's motion for judgment as a matter of law, Doc. #105.

**I**
**Procedural History**

On July 20, 2018, Jason Alston filed a pro se complaint in the United States District Court for the Northern District of Mississippi against Prairie Farms Dairy, Inc. d/b/a Luvel; Harold Leroy Papen; Ogletree, Deakins, Nash, Smoak & Stewart, P.C.; Blythe K. Lollar; and Timothy W. Lindsay. Doc. #1. With leave of the Court,[1] Alston filed an amended complaint[2] on November 18, 2018, naming only Prairie Farms and Papen as defendants. Doc. #14. The amended complaint contains five counts: (1) defamation; (2) intentional infliction of emotional distress; (3) civil conspiracy; (4) "reckless/ reckless conduct/ reckless endanger;" and (5) punitive damages. *Id.* at 9–13. All counts are asserted against all defendants except for the "reckless/ reckless conduct/ reckless endanger" count asserted against only Prairie Farms. *Id.*

[1] Doc. #13.

[2] The amended complaint asserts diversity jurisdiction. The original complaint asserted federal question jurisdiction.

After the Court denied the parties' initial motions for summary judgment for failure to comply with the Local Rules,[3] the parties refiled their motions on December 16, 2020. Docs. #84, #87. Alston's motion for summary judgment is fully briefed. Docs. #85, #98, #99.[4] Alston responded to the defendants' motion for summary judgment, Doc. #96; the defendants did not reply. On April 16, 2021, Alston filed a motion for judgment as a matter of law. Doc. #105. The defendants filed a response on April 30, 2021, Doc. #108; Alston filed an untimely reply on May 14, 2021, Doc. #109.

## II
## Summary Judgment Standard

Summary judgment is proper when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014). "A court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant. A court should enter summary judgment against a party when it has the burden of proof at trial yet fails to establish an element of its case." *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020) (internal citation omitted). "When parties file cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *McGlothin v. State Farm Mut. Ins. Co.*, 925 F.3d 741, 745 (5th Cir. 2019).

---

[3] Doc. #83.

[4] Alston's reply is untimely. *See* L.U. Civ. R. 7(b)(4) ("Counsel for movant desiring to file a rebuttal may do so within seven days after the service of the respondent's response and memorandum brief."). However, the Court will consider it since the defendants did not challenge the timeliness of the filing.

## III
## Relevant Facts[5]

Alston began working for Prairie Farms on October 26, 2015. Doc. #84-5 at PageID 719. At some point in his employment, Alston's supervisor, Donnie Riley, instructed him to unclog a sewage drain without personal protection equipment. Doc. #84-16 at 1. Alston performed the task while Riley watched. Doc. #84-1 at PageID 699. Less than two weeks after his hire, Alston's employment was terminated "within his 90 day period." Doc. #84-6 at PageID 723.

After his termination, Alston filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was discriminated against in retaliation for filing discrimination charges while employed with the Mississippi Department of Transportation. Doc. #84-8. In response to a letter from the EEOC,[6] Papen, as the Vice President of Human Resources and Labor Relations for Prairie Farms, sent a letter to Wilma Scott, the EEOC Area Office Director, "to set forth the position of Prairie Farms." Doc. #84-9 at PageID 737. The letter states that Prairie Farms "discharged Mr. Alston during his probationary period[] because he was unable to keep up with his work assignments which required loading trucks with dairy products. An additional person was being assigned to work with Mr. Alston because he was unable to complete his assignments timely." *Id.* at PageID 738.

Based on his discrimination claim, on December 13, 2016, Alston filed a lawsuit against Prairie Farms in the United States District Court for the Northern District of Mississippi. *Alston v. Prairie Farms Dairy, Inc.*, No. 4:16-cv-245. In support of its motion for summary judgment in

---

[5] With the exception of a declaration of the defendants' attorney, the defendants' exhibits are either duplicative of Alston's exhibits, *compare* Doc. #87-6 *with* Doc. #84-9 at PageID 737-39, or are copies of documents filed in a previous case Alston filed against Prairie Farms, *Alston v. Prairie Farms Dairy, Inc.*, No. 4:16-CV-245, which concerned Alston's employment and termination, *see* Doc. #87-4. The Court cites Alston's exhibits in setting forth the fairly straightforward facts relevant to the pending motions.

[6] Doc. #84-9 at PageID 734.

that case, Prairie Farms submitted declarations of Papen, Riley, Brad Hutchinson, and Rodney Smith. *See id.* at Doc. #43. Papen's declaration stated:

> Shortly after his hire, Mr. Alston's direct supervisor, Donny Riley, brought concerns regarding Mr. Alston's performance to Plant Manager Rodney Smith and then-Cooler Manager Brad Hutchinson. Mr. Riley, Mr. Hutchinson, and Mr. Smith all agreed that Mr. Alston was not a good fit for the position. Based on Mr. Riley's concerns and recommendations, Mr. Smith and Mr. Hutchinson determined that Mr. Alston was not likely to be successful in the position and to discharge his employment for this reason effective November 5, 2015.

Doc. #84-15 at PageID 777–78. Riley's declaration indicated that he was responsible for training Alston and he "almost immediately … voiced concern regarding Mr. Alston's performance … after [Riley] observed Mr. Alston not able to keep up with his work assignments." Doc. #84-14 at PageID 773. Both Smith and Hutchison stated that they were involved in both the initial decision to hire Alston and the decision to terminate his employment. Doc. #84-11 at PageID 760–62; Doc. #84-13 at PageID 768–70. They both stated that the termination decision was "[b]ased on … Riley's concerns and recommendations." Doc. #84-11 at PageID 762; Doc. #84-13 at PageID 769–70.

## IV
## <u>Defendants' Motion for Summary Judgment</u>

The defendants argue they are entitled to summary judgment on all of Alston's claims.

### A. Timeliness of Certain Claims

The defendants argue that Alston's claims of defamation, intentional infliction of emotional distress, and "reckless conduct" are barred by the applicable statutes of limitation. Doc. #88 at 6–11.

#### 1. Defamation

The defendants contend Alston's defamation claims are untimely because the allegedly defamatory statements were made on December 15, 2015, and November 14, 2017, and Alston

filed his amended complaint on November 16, 2018, beyond the one-year statute of limitations for defamation claims in Mississippi. Doc. #88 at 7.

Under Mississippi law,[7] Alston's defamation claims must be brought within one year of "the date of publication … to a third person." *Staheli v. Smith*, 548 So. 2d 1299, 1302 (Miss. 1989). Accordingly, the statute of limitations has run for any statement made on December 15, 2015.

Regarding statements made on November 14, 2017, although Alston filed his amended complaint on November 16, 2018, Doc. #14, his original complaint was filed on July 20, 2018, Doc. #1. Under Federal Rule of Civil Procedure 15, "[a]n amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim … that arose out of the conduct, transaction, or occurrence set out … in the original pleading." Here, the amended complaint removes parties and factual allegations related to those parties and contains changes to the jurisdictional allegations, but asserts the same claims based on the same occurrences as the original complaint. *Compare* Doc. #1 *with* Doc. #14. As the amended complaint "asserts the same claim[s] 'set forth or attempted to be set forth in the original complaint," it relates back to the original complaint. *United States v. Randall & Blake*, 817 F.2d 1188, 1191 (5th Cir. 1987). Because the amended complaint relates back to the filing of the original complaint and the original complaint was filed within one year of the statements, Alston's claims regarding statements on November 14, 2017, are not barred by the statute of limitations.

**2. Intentional infliction of emotional distress**

Similarly, the defendants' argument that Alston's intentional infliction of emotional

[7] In this diversity action, the Court applies the law of the forum state. *84 Lumbar Co. v. Cont'l Cas. Co.*, 914 F.3d 329, 333 (5th Cir. 2019).

distress claim is time barred must fail. Even under the one-year statute of limitations the defendants argue applies,[8] Alston's claim is timely because the amended complaint relates back to the original complaint. Further, although Mississippi courts previously applied a one-year statute of limitations to intentional infliction of emotional distress claims, the Mississippi Supreme Court recently held that the three-year statute of limitations of Miss. Code Ann. § 15-1-49 applies to claims for intentional infliction of emotional distress and other intentional torts which "do not fall within the specific subjects expressed within" a separate statute. *Geico Cas. Co. v. Stapleton*, __So. 3d __, No. 2019-IA-478, 2021 WL 1421668, at *3 (Miss. Apr. 15, 2021).

**3. Reckless conduct**

With respect to Alston's "reckless/ reckless conduct/ reckless endanger" claim, the defendants argue that the claim is time barred (1) because "reckless is a state of mind" and neither reckless nor reckless endangerment are causes of action in Mississippi, the claim "sounds in negligence, which is subject to a three-year statute of limitations;" and (2) the allegedly reckless conduct occurred on November 4, 2015, when Alston alleges that he worked in raw sewage with no personal protection equipment at the direction of his supervisor. Doc. #88 at 10–11.

The proper characterization of Alson's "reckless/ reckless conduct/ reckless endanger" claim is not clear from the complaint. Although the defendants interpret the claim as sounding in negligence and therefore barred by the three-year statute of limitations,[9] the allegations of Alston's complaint, including that Riley acted with "intent to cause harm" to Alston,[10] suggest an intentional tort. *See Irby ex rel. Collins v. Madakasira*, 252 So. 3d 614, 627 (Miss. Ct. App. 2018) ("Intentional behavior designed to bring about the plaintiff's injury forms the basis of an

---

[8] Doc. #88 at 9.

[9] *Geico*, 2021 WL 1421668, at *4 (Miss. 2021).

[10] Doc. #14 at 13.

intentional tort, and an intentional tort cannot be committed negligently.") (cleaned up). In his response, Alston does not address his reckless conduct claim. This failure to respond amounts to an abandonment of this claim.[1] *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339–40 (5th Cir. 2005) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."); *City of Canton v. Nissan N. Am., Inc.*, 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012) ("Failure to address a claim results in the abandonment thereof."). Accordingly, because Alston has abandoned this claim, the Court need not determine whether it is timely.

**B. Defamation Merits**

Turning to the merits, the defendants argue that Alston cannot establish the elements of defamation because the allegedly defamatory statements—the statement to the EEOC and the statements made in support of Prairie Farms' motion for summary judgment in the 2016 case—are privileged; were truthful and sworn under penalty of perjury; Alston cannot establish that Prairie Farms was negligent in publishing the statement; and Alston failed to identify damages suffered from the alleged defamation. Doc. #88 at 7–9. Alston responds that the defendants' privilege argument should be rejected because statements about his poor performance were "made before and after this litigation began in Alston vs Prairie Farms Case 4:16-cv-00245-DMB-JMV." Doc. #97 at 11. Alston does not address the defendants' other arguments.[11]

To establish a defamation claim under Mississippi law, the plaintiff must show:

> (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

[11] Relying on a Michigan state court case, Alston presents arguments related to whether the statements were published. However, the defendants do not dispute that the statements were published but rather argue that the statements were privileged.

*Simmons Law Grp., P.A. v. Corp. Mgmt., Inc.*, 42 So. 3d 511, 517 (Miss 2010).

"Mississippi courts consider statements made in connection with judicial proceedings, 'if in any way relevant to the subject matter of the action,' as 'absolutely privileged and immune from attack as defamation, even if such statements are made maliciously and with knowledge of their falsehood.'" *Lehman v. Holleman*, 526 F. App'x 346, 348 (5th Cir. 2013) (quoting *McCorkle v. McCorkle*, 811 So. 2d 258, 266 (Miss. Ct. App. 2001)). Under Mississippi law, there is "a liberal rule as to the determination of the degree of relevancy or pertinency necessary to make alleged defamatory matter privileged." *Id.* (internal quotation marks omitted). Thus, for the privilege not to apply, the statements "must be so palpably wanting in relation to the subject-matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety." *Id.*

Since Alston's defamation claim based on a December 15, 2015, statement is untimely, only the claim based on the November 14, 2017, statements need be addressed. These statements were made in support of a motion for summary judgment and directly relate to Alston's employment, the subject of the previous litigation. Accordingly, the statements are privileged and cannot support a defamation claim.[12]

**C. Intentional Infliction of Emotional Distress**

The defendants argue they are entitled to summary judgment on Alston's intentional infliction of emotional distress claim because "[t]he statements relating to his poor performance and inability to meet the performance expectations of the position do not constitute the type of extreme and outrageous conduct required for a viable [intentional infliction of emotional distress] claim." Doc. #88 at 10. Alston's only response regarding this claim relates to the defendants'

[12] Even if the claim regarding the December 15, 2015, statement to the EEOC was timely, it would be privileged. *See Davis v. AltaCare Corp.*, No. 2:05-cv-2027, 2007 WL 2026438, at *9 (S.D. Miss. July 9, 2007) ("The privilege is also available to an employer who reports truthful information about an employee to a government agency.").

timeliness argument addressed above. Doc. #97 at 11.

> A claim for intentional infliction of emotional distress requires that (1) the defendant acted willfully or wantonly toward the plaintiff by committing certain described actions; (2) the defendant's acts are ones that evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to; the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant. The standard for an intentional-infliction-of-emotional-distress claim is whether the defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent, or reckless.

*Jones v. City of Hattiesburg*, 228 So. 3d 816, 819 (Miss. Ct. App. 2017) (internal citations omitted).

Here, the defendants' statements challenged by Alston were made in response to an EEOC charge that Alston filed, and in support of Prairie Farms' motion for summary judgment in the previous litigation. Nothing in the record suggests that the act of making these statements or the contents of the statements would "evoke outrage or revulsion in civilized society," and there is no evidence that the statements were made to harm Alston. Further, although Alston argues in his summary judgment memorandum that he has satisfied the elements of his intentional infliction of emotional distress claim because "[n]ot being able to provide for your family is painful and very depressing,"[13] such vague, uncorroborated statements do not create a genuine issue of material fact to overcome summary judgment. *Bacharach v. Suntrust Mortgage, Inc.*, 827 F.3d 432, 436 (5th Cir. 2016) (plaintiff's "uncorroborated testimony" regarding her emotional distress was not sufficient for her claim to survive summary judgment). Accordingly, he cannot establish the elements of his intentional infliction of emotional distress claim and summary judgment on the claim is warranted.

**D. Civil Conspiracy**

Alston's amended complaint alleges that the defendants "agreed and worked together to

[13] Doc. #85 at 7.

achieve the common end of damaging Mr. Alston [sic] reputation and causing the plaintiff an unfair chance to be heard in [the previous case] with their false, defamatory and libelous statements." Doc. #14 at 12. The defendants argue that "Alston has pled no facts that establish an agreement between Defendant Prairie Farms and Harold Papen to damage his reputation and cause him an unfair chance to be heard. Nor has he presented any facts whatsoever that establish any unlawfulness, an overt act, or damages." Doc. #88 at 13 (internal quotation marks omitted). Alston responds that he has met his burden because Riley "is the only person who seen [sic] the plaintiff work performance and Donny Riley does not have a single piece of evidence to support his allegation of poor performance and he waited two (2) years later to give that statement." Doc. #97 at 11.

"Under Mississippi law, the elements of a civil conspiracy are: (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Rex Distrib. Co., Inc. v. Anheuser-busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019) (internal quotation marks omitted). Although "[a] person can conspire with a corporate entity,"[14] a corporation "cannot conspire with itself" and therefore cannot conspire with an agent acting on behalf of the corporation. *Orr v. Morgan*, 230 So.3d 368, 375 (Miss. Ct. App. 2017). Because Papen was apparently acting in his capacity as Vice President of Human Resources and Labor Relations of Prairie Farms when he made statements to the EEOC and in support of Prairie Farms' motion for summary judgment in the previous litigation, Prairie Farms could not conspire with Papen.[15] And there is no evidence in the record that Prairie Farms or Papen were involved in any

[14] *Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 339 n.4 (Miss. Ct. App. 2013).

[15] To the extent Papen was not acting as an agent of Praire Farms at the times he made the statements, Alston still has not submitted any evidence of an agreement between the parties to unlawfully harm him. Although Alston cites to documents related to his EEOC charge and declarations of Smith, Hutchison, Riley, and Papen as evidence of "an

agreement with a third party to unlawfully harm Alston. Accordingly, summary judgment on the conspiracy claim is proper.

### E. Punitive Damages

With regard to punitive damages, the defendants argue that because "Alston is not entitled to any damages whatsoever under Counts I-IV of his Complaint[, i]t is therefore axiomatic that Alston cannot be entitled to relief for punitive damages." Doc. #88 at 14. Alston responds that he is entitled to punitive damages because Papen and Prairie Farms acted maliciously and punitive damages are necessary "to deter this type [of] outrageous conduct in any Court proceedings." Doc. #97 at 11.

"Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a). Because Alston has not shown that Prairie Farms or Papen acted with malice, reckless disregard, or committed actual fraud in making the statements,[16] he is not entitled to punitive damages.

### F. Summary

In response to the defendant's motion for summary judgment, Alston has failed to show that there is a genuine issue of material fact on any of his claims. Accordingly, Prairie Farms and Papen are entitled to summary judgment.

---

agreement between Harold Papen and Prairie Fam Supervisors to commit a [sic] unlawful act against" him, Doc. #85 at 7, he fails to explain why such documents show an agreement, and an unlawful agreement is not apparent on the face of the documents.

[16] To the extent Alston requests punitive damages based on his working in raw sewage under Riley's supervision, he has not presented any evidence that Riley acted with the requisite intent to justify punitive damages.

**V**
**Remaining Motions**

The defendants are entitled to summary judgment on all of Alston's claims. The arguments and evidence Alston presents in his motion for summary judgment, Doc. #84, and in his motion for judgment as a matter of law, Doc. #105, do not alter this Court's determination that he has failed to show a genuine issue of material fact on any element of his claims. Accordingly, the remaining motions will be denied as moot. *Liquid Drill, Inc. v. U.S. Turnkey Exp., Inc.*, 48 F.3d 927, 929 (5th Cir. 1995) (affirming district court decision denying as moot plaintiffs' cross motion for summary judgment after granting defendants' motion for summary judgment).

**VI**
**Conclusion**

The defendants' motion for summary judgment [87] is **GRANTED**. Alston's motion for summary judgment [84] and his motion for judgment as a matter of law [105] are **DENIED as moot**. A final judgment will issue separately.

**SO ORDERED**, this 21st day of May, 2021.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**